2020 PA Super 177

| NADIA SOLVEIQ QUINTERO DIAZ | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| v. | : | |
| | : | |
| GALIB NABIYEV | : | |
| | : | |
| Appellant | : | No. 1510 WDA 2019 |

Appeal from the Order Dated September 10, 2019
In the Court of Common Pleas of Allegheny County Family Court at
No(s):  FD-19-001464

BEFORE:   MURRAY, J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

OPINION BY MURRAY, J.:                                    FILED JULY 29, 2020

Galib Nabiyev (Appellant) appeals from the final protection from abuse (PFA) order entered against him with respect to his former paramour, Nadia Solveiq Quintero Diaz (the Victim).  We affirm.

In September 2018, Appellant and the Victim met through a dating website.  At the time, the Victim lived in Michigan and Appellant lived in Pennsylvania.  By October 2018, the Victim and Appellant were involved in a serious relationship, and the Victim moved to Pennsylvania to live with Appellant.  Shortly thereafter, the Victim and Appellant were married in an Islamic religious ceremony before an imam.  The Victim and Appellant did not, however, enter into a legally recognized marriage.  Appellant was unaware

_____

[*] Former Justice specially assigned to the Superior Court.

during the early stages of their relationship that the Victim was legally married to someone else.

Shortly after their religious union, the parties' relationship deteriorated. For example, in December 2018, Appellant sought sexual relations with the Victim. The Victim, who felt uncomfortable by Appellant's aggressive behavior, rejected his sexual advances and attempted to leave their home. Appellant proceeded to push the Victim against a wall and forced her to kiss him. Appellant then grabbed the Victim by the arm, refused to let her leave, and threatened to kill her if she ever left him.

Around April 2019, the Victim became pregnant with Appellant's child. Appellant asked the Victim to have an abortion, and when she refused, forced her out of the couple's home. In May 2019, the Victim suffered a miscarriage. Shortly thereafter, Appellant learned the Victim was legally married to someone else, and the relationship further deteriorated.

After these events, the Victim went to the imam at the parties' mosque to request a "final paper, to formalize their separation, according to our religion." N.T., 9/10/19, at 13. While the Victim was at the mosque, Appellant showed up, and after the Victim refused Appellant's requests to take him back, Appellant grabbed the Victim's hijab and began screaming obscenities at her and threatening to ruin her life. The imam intervened and instructed the Victim to run away.

Finally, on September 1, 2019, Appellant showed up outside of the restaurant where the Victim worked. When the Victim left the restaurant for the night, Appellant followed her to her car in his vehicle, threatening her and screaming obscenities as she walked. Appellant prevented the Victim from leaving by blocking her vehicle with his car. The Victim called the police.

Due to this most recent event, on September 3, 2019, the Victim filed a petition for a PFA order. The same day, the trial court entered a temporary PFA order and scheduled a hearing. On September 10, 2019, the trial court held a hearing on the petition; afterward the court granted a one-year final PFA order against Appellant. This timely appeal followed.[1]

On appeal, Appellant presents the following issue for review:

> DID THE COURT OF COMMON PLEAS ERR AS A MATTER OF LAW AND/OR ABUSE ITS DISCRETION WHEN IT GRANTED A FINAL PROTECTION FROM ABUSE ORDER, BECAUSE THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT A FINDING OF ABUSE AS DEFINED BY 23 PA.C.S.A. § 6102[?]

Appellant's Brief at 6.

Appellant argues that the trial court erred in granting a final PFA order. Specifically, Appellant asserts that there was insufficient evidence to support a finding of abuse under 23 Pa.C.S.A. § 6102(a)(5). Appellant contends that any abuse in the relationship transpired long before the Victim filed her petition, and the incidents of abuse are of limited probative value in

_____

[1] Both the trial court and Appellant have complied with Pennsylvania Rule of Appellate Procedure 1925.

determining whether the Victim reasonably feared imminent bodily harm. Thus, Appellant maintains that there was no evidence to support the trial court's finding that the Victim possessed a reasonable fear of imminent bodily harm.

Preliminarily, we recognize that "[t]he purpose of the [PFA act] is to protect victims of domestic violence from the perpetrators of that type of abuse and to prevent domestic violence from occurring." Ferko-Fox v. Fox, 68 A.3d 917, 921 (Pa. Super. 2013). The Act defines abuse:

> "Abuse." The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or person who share biological parenthood.
>
> (1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon.
>
> (2) Placing another in reasonable fear of imminent serious bodily injury.
>
> (3) The infliction of false imprisonment pursuant to 18 Pa.C.S.[A.] § 2903 (relating to false imprisonment).
>
> (4) Physically or sexually abusing minor children including such terms as defined in Chapter 63 (relating to child protective services).
>
> (5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury. The definition of this paragraph applies only to proceedings commenced under this title and is inapplicable to any criminal prosecution commenced under Title 18 (relating to crimes and offenses).

23 Pa.C.S.A. § 6102(a).

We review the propriety of a PFA order for an abuse of discretion or an error of law. Ferko-Fox, 68 A.3d at 920. This Court has explained:

> When faced with a sufficiency challenge under the PFA Act, we review the evidence in the light most favorable to the petitioner and, granting her the benefit of all reasonable inferences, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence. Hood-O'Hara v. Wills, 873 A.2d 757, 760 (Pa. Super. 2005). Furthermore, we must defer to the credibility determinations of the trial court. Id. Finally, we note that a PFA petitioner is not required to file a police report, nor is it necessary for her to introduce medical evidence of an injury. Id. at 761. The petitioner's testimony is sufficient if it is believed by the trial court. Id.

Custer v. Cochran, 933 A.2d 1050, 1058 (Pa. Super. 2007).

Regarding the relevance and probative value of evidence of prior instances of alleged abuse, this Court has explained:

> Questions concerning the admission or exclusion of evidence are within the sound discretion of the trial court and may be reversed on appeal only when a clear abuse of discretion was present. Soda v. Baird, 600 A.2d 1274 (Pa. Super. 1991). In Snyder v. Snyder, [629 A.2d 977 (Pa. Super. 1993)], the court held that a person filing a protection from abuse petition will not be "rigorously limited to the specific allegations of abuse found in the Petition." [Id. at 981]. The court further held that in light of the purpose of the Act to "prevent imminent harm to abused person(s)," some flexibility must be allowed in the admission of evidence relating to past acts of abuse. Id. at 982.
>
> . . . In light of the protective purposes of the act, it was within the trial court's discretion to hear any relevant evidence that would assist it in its obligation to assess the [complainant]'s entitlement to and need for a protection from abuse order. If the trial court found the testimony to involve events too distant in time to possess great relevance to the case, it could certainly have assigned less weight to the testimony. However, it was not an

abuse of discretion for the trial court to hear the evidence. Past abusive conduct on the appellant's part was a crucial inquiry necessary for entry of a proper order.

Miller v. Walker, 665 A.2d 1252, 1259 (Pa. Super. 1995) (citations modified).

In this case, all of the instances of abuse to which the Victim testified occurred within 10 months of the Victim filing a petition for a PFA order. The Victim testified that in December 2018, Appellant pushed her against a wall and forced her to kiss him. She further stated that Appellant threatened to kill her if she ever left him. N.T., 9/10/19, at 24-25. The Victim also reported that when she went to the imam to request a "final paper, to formalize their separation, according to our religion," Appellant appeared, grabbed the Victim's hijab, and began screaming obscenities at her and threatening her, after she refused to take him back. Id. at 13-14. Appellant's actions were so aggressive that the imam intervened and urged the Victim to run away. See id.

The Victim further testified that on September 1, 2019, Appellant appeared at the restaurant where the Victim worked, and threatened her and screamed obscenities. Appellant prevented the Victim's escape by blocking her vehicle in its parking spot with his own car, compelling the Victim to call the police. Id. at 7-10. It was this incident that led the Victim to seek a PFA order. See id. at 12. The Victim testified that all of Appellant's menacing behavior, including his acts of physical violence, his verbal threats to ruin the

Victim's life, and his threats to kill her, caused her to be in fear of imminent bodily injury. Id. at 40.

The trial court, in its discretion, found the above incidents to be relevant. Trial Court Opinion, 1/2/20, at 5-6; see also Miller, 665 A.2d at 1259. The court also found the Victim's testimony credible and we are bound by that determination. Trial Court Opinion, 1/2/20, at 5-6; see also Custer, 933 A.2d at 1058. Viewing the evidence in the light most favorable to the Victim as the prevailing party below, we conclude that the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence that Appellant knowingly engaged in a course of conduct toward the Victim that placed her in reasonable fear of bodily injury. See 23 Pa.C.S.A. § 6102(a)(5); Custer, 933 A.2d at 1058. Accordingly, the trial court did not err.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/29/2020